# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BETTY JEAN WILSON | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-10-198-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Betty Jean Wilson requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining that she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do his previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security

regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

---

[1] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

### Claimant's Background

The claimant was born September 12, 1951 and was fifty-seven years old at the time of the administrative hearing (Tr. 27, 106). She completed her GED (Tr. 129), and has worked as an office manager (Tr. 52). The claimant alleged that she has been unable to work since May 1, 2006 due to agoraphobia. (Tr. 125).

### Procedural History

On May 11, 2007, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 (Tr. 106-110). Her application was denied. ALJ Richard Kallsnick conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated June 29, 2009 (Tr. 11-22). The Appeals Council denied review; thus, the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found the claimant had the residual functional capacity (RFC) to perform a full range of medium work, *i. e.*, she could lift up to fifty pounds at a time and lift/carry up to twenty-five pounds frequently, limited to performing simple tasks with routine supervision, relating superficially to supervisors and coworkers and adapting to routine work situations, but not relating to the general public (Tr. 16). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform in the regional and national economies, *e. g.*, hand

packaging (at both light and medium exertional levels), kitchen helper, mail clerk, and sorting. (Tr. 20-21).

## Review

The claimant contends that the ALJ erred (i) by failing to properly consider the opinion of her treating physician Dr. Robert V. Hensley, D.O. and opinions from various examining physicians; (ii) by failing to perform a proper credibility determination; and (iii) by failing to perform a proper step five analysis, including failing to consider a closed period of disability. The Court finds the ALJ *did* fail to properly consider Dr. Hensley's opinion, and the decision of the Commissioner must therefore be reversed.

The relevant medical evidence shows that the claimant had the severe impairments of panic disorder with agoraphobia, depression, and anxiety. (Tr. 13). At the administrative hearing, the claimant testified that her disability began on May 1, 2006, when she was verbally "attacked" by her supervisor at her job. (Tr. 28-29). She then began seeking treatment with a physician and a licensed counselor, due to the emotional impact of that event. (Tr. 30-31). She stated that she rarely goes anywhere in public by herself, and that she does not like when people stare at her when she goes out in public. (Tr. 31-32). She only goes to church with her husband because he is the pastor. (Tr. 32). She struggles with time and appointments, because "[t]ime has no meaning to [her] anymore." (Tr. 35). She has attempted to complete a job application, but "took a Valium" before filling it out and still has not done so. (Tr. 36). Her attorney asked her if she could work in an office with people around her, and she replied, "Long as I didn't have to deal with anybody, maybe." (Tr. 36). She also testified that before the May 1,

2006 incident, she used to be outgoing, friendly, and active in her church, but that she has no interest in other people or activities anymore. (Tr. 38-39). The claimant's daughter testified that her mother used to be, "extremely professional" and "very courteous," but that she now lacks interest in others and does not leave the house without someone accompanying her, and that she believes that people are staring at her when she goes out in public. (Tr. 42-46).

The claimant left work on May 1, 2006 following the altercation with her supervisor, and went to her physician, Dr. Mark Seratt. Dr. Seratt noted that the claimant arrived in tears and left in tears, and stated that she could not return to work. (Tr. 195). Dr. Seratt's notes through July 2006 indicate that the claimant continued to report an inability to return to work, and would arrive at his office in tears. On June 30, 2006, Dr. Seratt referred the claimant to psychiatrist Robert Hensley. (Tr. 194-95). Dr. Hensley began treating the claimant on August 8, 2006. He performed a Psychiatric Assessment on the claimant, and diagnosed her with panic disorder with agoraphobia, major depression recurrent severe, and adjustment disorder with anxious features, with a GAF of 50. (Tr. 220). He continued to treat her through July of 2008, and also referred her to a licensed counselor. His notes reflect that she continued to exhibit symptoms of depression and although she eventually become more comfortable out in public, she continued to scan the faces of people, looking for her former supervisor. (Tr. 210-221, 242-250). On March 2, 2007, he prepared a letter to the claimant's insurance company, stating that she was "unable to work at any job due to her continued panic attacks as well as severe rage and anger. . . . Due to her psychiatric condition even the slightest

disagreement between her and another individual could cause her to become very violent and be a serious physical threat to others." (Tr. 208). He prepared another letter on April 7, 2008, stating that post-traumatic stress disorder caused her to miss a deadline for her social security appeal. (Tr. 242).

The record reflects extensive treatment notes from Licensed Professional Counselor H. Ellis Stout, from January 5, 2007 through December 23, 2008. (Tr. 251-398). At their initial session, he found that she was 81% toward a depressed mood, on the Depressed Mood Scale. (Tr. 252). The next month, he assessed her with a GAF of 45. (Tr. 258). Mr. Stout periodically assessed the claimant's depression symptoms on a scale from 0 to 8, beginning April 28, 2007. He first assessed the claimant's depression as a 6 for "markedly disturbing/disabling," and through October 2007, it was never less than 4.5, "definitely disturbing/disabling." He ranked her depression on October 29, 2007 as a 3, between "slightly disturbing/not really disturbing" and "definitely disturbing/ disabling." During the 2007-2008 holiday season, her depression was an 8, or "very severely disturbing/disabling," but it was reported at a 2, or "slightly disturbing/not really disturbing" in June and December 2008 (Tr. 283, 308, 313, 315, 317, 321, 324, 333, 337, 341, 363, 380, 389, 396).

In his written decision, the ALJ summarized the testimony of the claimant and her daughter, and the medical record, including records from Dr. Hensley and Mr. Stout. The ALJ noted that "the record does not contain any opinions from treating or non-treating physicians indicating that the claimant is disabled or has limitations greater than those determined in this decision" (Tr. 19), but this was clearly incorrect; as discussed above,

-6-

Dr. Hensley opined on March 2, 2007 that the claimant was "unable to work at any job due to her continued panic attacks as well as severe rage and anger." (Tr. 208).

Medical opinions from a treating physician such as Dr. Hensley are entitled to controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record." *Langley v. Barnhart,* 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003). When a treating physician's opinions are not entitled to controlling weight, the ALJ must determine the proper weight to give them by analyzing all of the factors set forth in 20 C.F.R. § 404.1527. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527."), *quoting Watkins,* 350 F.3d at 1300. The applicable factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) any other factors that tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). And if the ALJ decides to reject a treating physician's opinions entirely, he is required to "give specific, legitimate reasons for doing so." *Id.* at

1301. In sum, it must be "clear to any subsequent reviewers the weight the ALJ gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300.

The ALJ was not required to give controlling weight to Dr. Hensley's opinion that the claimant was "unable to work at any job," because such determinations are for the ALJ himself to make. *See, e. g.,* 20 C.F.R. § 404.1527(e)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). But the ALJ *was* required to determine the proper weight to give this opinion by applying the factors in 20 C.F.R. § 404.1527. *See Langley,* 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, [t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527."), *quoting Watkins,* 350 F.3d at 1300. *See also Miller v. Barnhart,* 43 Fed. Appx. 200, 204 (10th Cir. 2002) ("The [ALJ] is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner."); Soc. Sec. Rul. 96-5p, 1996 WL 374183, at *3 (July 2, 1996) ("If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record."). The ALJ neither performed the necessary analysis nor specified the weight he was assigning to Dr. Hensley's opinion that the claimant was disabled.

Because the ALJ failed to properly analyze the weight due Dr. Hensley's opinion, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis. If such results in any adjustment to the claimant's mental RFC, the ALJ should re-determine what work, if any, she can perform and ultimately whether she is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 20th day of September, 2011.

/s/ Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma